## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVY CHENG,<br><br>                 Plaintiff,<br><br>      v.<br><br><br>CANTEL MEDICAL CORP., CHARLES M. DIKER, GEORGE L. FOTIADES, ALAN R. BATKIN, ANN E. BERMAN, MARK N. DIKER, ANTHONY B. EVNIN, LAURA FORESE, RONNIE MYERS, PETER PRONOVOST, and KAREN N. PRANGE,<br><br>                 Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Ivy Cheng ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Cantel Medical Corporation ("Cantel" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Cantel and the Defendants.

**SUMMARY OF THE ACTION**

1.      This is an action brought by Plaintiff against Cantel and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to STERIS plc ("STERIS") (the "Proposed Transaction").

2.      On January 12, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with STERIS.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive (i) 0.33787 ordinary shares of STERIS, and (ii) $16.93 in cash per share of Cantel owned (the "Merger Consideration"). Based on the closing price of STERIS Shares on January 11, 2021, the last trading day before the public announcement of the signing of the Merger Agreement, the value of the Merger Consideration payable to Cantel shareholders upon completion of the Proposed Transaction was approximately $84.66 per share of Cantel Common Stock.

3.      On April 1, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Cantel and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cantel shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Cantel shares.

9.      Defendant Cantel is incorporated under the laws of Delaware and has its principal executive offices located at 150 Clove Road, Little Falls, New Jersey 07424.  The Company's common stock trades on the New York Stock Exchange under the symbol "CMD."

10.     Defendant Charles M. Diker ("M. Diker") is and has been a director of Cantel at all times during the relevant time period.

11.     Defendant George L. Fotiades ("Fotiades") is and has been the Chief Executive Officer and a director of Cantel at all times during the relevant time period.

12.     Defendant Alan R. Batkin ("Batkin") is and has been a director of Cantel at all times during the relevant time period.

13.     Defendant Ann E. Berman ("Berman") is and has been a director of Cantel at all times during the relevant time period.

14.     Defendant Mark N. Diker ("N. Diker") is and has been a director of Cantel at all times during the relevant time period.

15.     Defendant Anthony B. Evnin ("Evnin") is and has been a director of Cantel at all times during the relevant time period.

16.     Defendant Laura Forese ("Forese") is and has been a director of Cantel at all times during the relevant time period.

17.     Defendant Ronnie Myers ("Myers") is and has been a director of Cantel at all times during the relevant time period.

18.     Defendant Peter Pronovost ("Pronovost") is and has been a director of Cantel at all times during the relevant time period.

19.     Defendant Karen N. Prange ("Prange") is and has been a director of Cantel at all times during the relevant time period.

20.     Defendants M. Diker, Fotiades, Batkin, Berman, N. Diker, Evnin, Forese, Myers, Pronovost, and Prange are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Cantel, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Cantel is a leading provider of infection prevention products and services in the healthcare market, specializing in the following reportable segments: Medical, Life Sciences, Dental and Dialysis. Most of Cantel's equipment, consumables and supplies are used to help prevent the occurrence or spread of infections. Cantel operates in four segments through wholly-owned subsidiaries in the U.S. and internationally. Cantel's products include specialized medical device reprocessing systems for endoscopy and renal dialysis, advanced water purification equipment, sterilants, disinfectants and cleaners, sterility assurance monitoring products for hospitals and dental clinics, disposable infection control products primarily for dental and GI endoscopy markets, instruments and instrument reprocessing workflow systems serving the dental industry, dialysate concentrates, hollow fiber membrane filtration and separation products. Additionally, Cantel provides technical service for its products.

### The Company Announces the Proposed Transaction

23.     On January 12, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> DUBLIN, IRELAND and LITTLE FALLS, N.J, Jan. 12, 2021 (GLOBE NEWSWIRE) -- STERIS plc (NYSE: STE) ("STERIS" or the "Company") and Cantel Medical Corp (NYSE:CMD) ("Cantel") today announced that STERIS has signed a definitive agreement to acquire Cantel, through a U.S. subsidiary.  Cantel is a global provider of infection prevention products and services primarily to endoscopy and dental Customers.  Under the terms of the agreement, STERIS will acquire Cantel in a cash and stock transaction valued at $84.66 per Cantel common share, based on STERIS's closing share price of $200.46 on January 11, 2021. This represents a total equity value of approximately $3.6 billion and a total enterprise value of approximately $4.6 billion, including Cantel's net debt and convertible notes.  The agreement has been unanimously approved by the Boards of Directors of both companies.

"We have long appreciated Cantel, which is a natural complement and extension to STERIS's product and service offerings, global reach and Customers," said Walt Rosebrough, President and Chief Executive Officer of STERIS.  "Our companies share a similar focus on infection prevention across a range of healthcare Customers.  Combined, we will offer a broader set of Customers a more diversified selection of infection prevention and procedural products and services.  We welcome the people of Cantel to the STERIS team and firmly believe we will create greater value for our Customers and shareholders together."

Charles M. Diker, Chairman of the Cantel Board of Directors, has separately entered into a voting support agreement along with certain other entities collectively holding approximately 10% of Cantel's outstanding shares. Mr. Diker said, "We are pleased to reach this agreement with STERIS, which is the culmination of a robust process to achieve an outcome that allows Cantel shareholders to participate in the significant upside of the combined company, while also providing them with immediate cash value.  Together with STERIS, we believe the value opportunity is compelling, both today and in a post-COVID world, as the combined company will have the scale, breadth and depth to unlock substantial value that will drive further benefits for Cantel shareholders, Customers and all stakeholders."

"We believe Cantel and STERIS are a perfect strategic fit, and this combination is a natural next step for our company, enabling us to accelerate progress on our Cantel 2.0 initiatives and drive enhanced value for shareholders and the healthcare providers and systems we support," said George Fotiades, CEO of Cantel.  "The last year has demonstrated more than ever the importance of innovative and comprehensive infection prevention and control solutions that protect healthcare providers and patients.  Together with STERIS, we will be able to provide a more extensive and innovative suite of offerings to our Customers around the world.  Importantly, STERIS recognizes that our proven and talented team is the foundation of Cantel's success and we look forward to working collaboratively to bring our two organizations together."

This transaction brings together STERIS's and Cantel's franchises to create a stronger global business serving a broader set of Customers. Cantel's largest business, its Medical portfolio, will strengthen and expand STERIS's Endoscopy offerings, adding a full suite of high-level disinfection consumables, capital equipment and services, as well as additional single-use accessories. Cantel's Dental business extends STERIS into a new Customer segment where there is an increasing focus on infection prevention protocols and processes.  Annual revenue for Cantel in its recent fiscal year ended July 31, 2020, was approximately $1 billion, with adjusted EBIT of approximately $134 million.

**Financial Highlights and Transaction Details**

The companies expect to realize annualized pre-tax cost synergies of approximately $110 million by the fourth fiscal year following the close, with approximately 50% achieved in the first two years.  Cost synergies are expected to be primarily driven by cost reductions in redundant public company and back-office overhead, commercial integration, product manufacturing, and service operations.

Under the terms of the agreement, Cantel common stockholders will receive approximately $16.93 in cash and 0.33787 of a STERIS ordinary share, or a total of value of approximately $84.66 per Cantel common share based on STERIS's closing share price of $200.46 on January 11, 2021.  The transaction is anticipated to close by the end of STERIS's first quarter of fiscal 2022 (ending June 30, 2021), pending customary closing conditions including receipt of regulatory approvals and approval by Cantel stockholders.

STERIS expects to fund the cash portion of the transaction consideration and repay a significant amount of Cantel's existing debt with approximately $2.0 billion of new debt and has obtained fully committed bridge financing.

**Conference Call**

Management from both companies will host a conference call at 8:00 a.m. ET today.  The conference call can be heard live online at steris-ir.com or via phone by dialing 1-833-535-2199 in the United States or 1-412-902-6776 internationally, then asking to join the conference call for STERIS plc.

For those unable to listen to the conference call live, a replay will be available by 12:00 p.m. ET today, either online at steris-ir.com or via phone.  To access the replay of the call, please use the access code 10151379 and dial 1-877-344-7529 in the United States or 1-412-317-0088 internationally.

**Advisors**

Guggenheim Securities is serving as financial advisor to STERIS and Jones Day is serving as legal counsel.  JPMorgan Chase Bank, N.A., served as sole lead arranger and bookrunner in respect of the bridge financing. Centerview Partners LLC is serving as exclusive financial advisor to Cantel and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

**FALSE AND MISLEADING STATEMENTS**
**AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

24.    On April 1, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

26.    The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to the Company's projections for both Cantel and STERIS, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material<br>Misrepresentations or Omissions Regarding Centerview's Financial Opinion

31.     The Proxy Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Centerview's *Discounted Cash Flow Analysis* for Cantel, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Centerview's use of the

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

discount rate range of 9.25% to 10.00%; (ii) the inputs and assumptions underlying Centerview's use of the perpetuity growth rates ranging from 3.75% to 4.50%; (iii) the terminal values for Cantel; (iv) the after-tax unlevered free cash flow for Cantel; (v) the number of fully-diluted outstanding shares of Cantel Common Stock as of January 8, 2021.

33.     With respect Centerview's *Analyst Price Target Analysis* for Cantel, the Proxy Statement fails to disclose the sources of the price targets observed by Centerview, as well as the individual price targets.

34.     With respect to Centerview's *Premiums Paid Analysis* for Cantel, the Proxy Statement fails to disclose the specific transactions observed as well as the premiums paid in each.

35.     With respect to Centerview's *Discounted Cash Flow Analysis* for STERIS, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Centerview's use of the discount rate range of 7.50% to 8.25%; (ii) the inputs and assumptions underlying Centerview's use of the perpetuity growth rates ranging from 3.75% to 4.50%; (iii) the terminal values for STERIS; (iv) the after-tax unlevered free cash flow for STERIS; (v) the number of fully-diluted outstanding shares of STERIS as of January 8, 2021.

36.     With respect Centerview's *Analyst Price Target Analysis* for STERIS, the Proxy Statement fails to disclose the sources of the price targets observed by Centerview, as well as the individual price targets.

37.     Lastly, the Proxy Statement notes that "Cantel has agreed to reimburse certain of Centerview's expenses arising, . . . out of Centerview's engagement," but fails to disclose the monetary amount of expenses that Cantel will reimburse.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

40.     The Proxy Statement contains information concerning the process leading up to the Proposed Transaction, but fails to include material information concerning such.

41.     Specifically, the Proxy Statement notes that between October 19, 2020 and November 14, 2020, the Company entered into confidentiality agreements with five prospective suitors. However, the Proxy Statement fails to disclose whether any of these interested parties entered into any "don't ask, don't waive" ("DADW") provisions that would prevent the potential suitor from making a topping bid for the Company.

42.     This information is material to shareholders in deciding whether to tender their shares in favor of the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Cantel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cantel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 14, 2021                                   Respectfully submitted,

                                                        By: */s/ Joshua M. Lifshitz*
                                                        Joshua M. Lifshitz
                                                        Email: jml@jlclasslaw.com
                                                        **LIFSHITZ LAW FIRM, P.C.**
                                                        1190 Broadway
                                                        Hewlett, New York 11557
                                                        Telephone: (516) 493-9780
                                                        Facsimile: (516) 280-7376

                                                        *Attorneys for Plaintiff*